IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GABRIEL SILVA, | § | |
| PETITIONER, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:06-CV-0242-Y |
| | § | |
| NATHANIEL QUARTERMAN, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, INSTITUTIONAL DIVISION, | § | |
| RESPONDENT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.     NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254.

B.     PARTIES

Petitioner Gabriel Silva is in the custody of the Texas Department of Criminal Justice, Institutional Division (TDCJ-ID),  TDCJ-ID #1137714, and is presently incarcerated in the John B. Connally Unit in Kenedy, Texas.

Respondent Quarterman is the Director of the Texas Department of Criminal Justice, Institutional Division.

C.     PROCEDURAL HISTORY

Gabriel Silva was indicted in Cause 0826138D for the aggravated robbery of Mike Urash and was indicted in Cause 0833761D for the aggravated robbery of Steven Morrow. (Clerk R. [0826138D] at 3, Clerk R. [0833761] at 3). The offenses occurred on November 18, 2001 and stemmed from Silva's theft of some DVDs from a K-Mart store. *See Silva v. State*, Nos. 2-02-425-CR, 2-02-426-CR, slip op. at 2 (Tex. App.—Fort Worth Jan. 29, 2004, pet. ref'd). When confronted by Urash and Morrow, who were K-Mart employees, Silva stabbed both men. *See id.*

Silva pleaded not guilty to the indictments and a jury trial commenced in September 2002 in Criminal District Court Number 4, Tarrant County, Texas. On September 27, 2002, the jury found Silva guilty of aggravated robbery with a deadly weapon in both cases. (Clerk R. [#0826138D] at 314, Clerk R. [#0833761] at 307). The trial court assessed punishment and sentenced Silva to thirty-five years' confinement for each offense, with his sentences running concurrently. (Clerk R. [#0826138D] at 319, Clerk R. [#0833761] at 313).

The Court of Appeals for the Second District of Texas affirmed both judgments in an unpublished opinion on January 29, 2004. *Silva v. State*, Nos. 2-02-425-CR, 2-02-426-CR (Tex. App.—Fort Worth Jan. 29, 2004, pet. ref'd). The Texas Court of Criminal Appeals refused Silva's petitions for discretionary review. *Silva v. State*, Nos. PD-0370-04, PD-0371-04 (Tex. Crim. App. July 28, 2004). Silva filed two state applications for writ of habeas corpus challenging his convictions, but both applications were denied by the Texas Court of Criminal Appeals on November 23, 2005 without written order based on the findings of the trial court without a hearing. *Ex parte Silva*, Nos. WR-62,930-01, WR-62,930-02 at covers (Tex. Crim. App. Nov. 23, 2005).

Silva filed his federal petition for writ of habeas corpus on April 4, 2006.[1]  Respondent has answered the petition, and Silva has also submitted a reply brief.

D.     ISSUES

Silva alleges the following grounds for relief:

   1.       his convictions violate double jeopardy protections;

   2.       the evidence is insufficient to support his convictions;

   3.       inflammatory demonstrative evidence should have been excluded from trial;

   4.       the trial court erred at sentencing; and

   5.       he was denied the effective assistance of counsel on appeal.

E.     RULE 5 STATEMENT

Respondent agrees that Petitioner has sufficiently exhausted available state remedies on the issues presented.

F.     LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

The standards codified in 28 U.S.C. § 2254 guide our review of a petition for writ of habeas corpus filed by a state prisoner:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] A federal petition is deemed filed on the date the petitioner executed his petition and presumably deposited it in the prison mailing system. *Spotville v. Cain*, 149 F.3d 374 (5th Cir. 1998).

28 U.S.C. § 2254(d).  *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481

(1997).   Relief is authorized if a state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law or if the state court decides a case differently than the Supreme

Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct.

1495, 1523, 1518, 146 L.Ed.2d 389 (2000).  Relief is also available if the state court identifies the

correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or

reaches a decision based on an unreasonable factual determination.  *See* 28 U.S.C. §2254(d)(1)-(2);

*Montoya v. Johnson*,  226 F.3d 399, 404 (5th Cir. 2000).  Mere disagreement with the state court is

not enough:  The standard is one of objective reasonableness.  *Montoya*, 226 F.3d at 404.

In addition, state court determinations of underlying factual issues are presumed correct

absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a

state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state court proceeding.  28 U.S.C.

§ 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399.  The

presumption of correctness applies to both explicit findings of fact and findings of fact implicit in

the state court's conclusions of mixed law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 948 & n. 11

(5th Cir. 2001). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas

corpus application without written opinion, as here, it is an adjudication on the merits, which is

entitled to this presumption.  *See Bledsue v. Johnson*, 188 F.3d 250, 256-57 (5th Cir. 1999); *Ex parte*

*Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

G.     DISCUSSION

1.     Double Jeopardy

Silva asserts that he has been subjected to multiple prosecutions and convictions for the same offense in violation of double jeopardy.  *See generally* U.S. Const. amend. V.  Silva argues that he committed only one offense, i.e., a single theft with two victims, and notes that the indictments in Cause 0826138D and Cause 0833761D are factually identical except for the name of the complainant.

The state courts rejected Silva's complaint based on the Texas Court of Criminal Appeals' opinion in *Ex parte Hawkins*, 6 S.W.3d 554 (Tex. Crim. App. 1999).  In *Hawkins*, the Court of Criminal Appeals held that prosecuting a defendant twice for aggravated robbery when he committed only one theft did not violate double jeopardy because each offense involved a different victim.   *Id*. at 561.  In particular, the Court of Criminal Appeals considered the language of the statute and determined that robbery is considered a form of assault under state law, and thus, the "allowable unit of prosecution" for the offense of robbery is each victim.[2]  *Id*. at 560-61.

---

[2]   A person commits aggravated robbery under Texas law if he commits robbery and he:

(1) causes serious bodily injury to another; [or]
(2) uses or exhibits a deadly weapon.

Tex. Penal Code Ann. § 29.03 (Vernon 2003).  A robbery is committed if, in the course of committing theft and with intent to obtain or maintain control of the property, a person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or
(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

*Id*. § 29.02.  In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.  *Id*. § 29.01(1). Silva contends that a robbery involving two victims, but only one theft, should constitute only one offense because aggravated robbery is included in the section of the penal code reserved for property offenses, not in the section for offenses against persons. The Texas Court of Criminals Appeals considered and rejected this argument.  *Hawkins*, 6 S.W.3d at 560. Silva also notes that the items stolen were not the property of either of his victims, but the Texas penal statute does

Silva asserts that the state court rejection of his double jeopardy argument is contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court because the Court of Criminal Appeals' decision in *Ex parte Hawkins* conflicts with the Supreme Court's opinion in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger*, the Supreme Court announced that the test for whether the same act or transaction constitutes a violation of two distinct statutory provisions is whether each provision requires proof of a fact that the other does not. *Id*. at 304, 52 S.Ct. at 182. On its face, *Blockburger* applies to conduct that allegedly violates different statutes, not conduct that allegedly constitutes multiple violations of the same statute. The Court of Criminal Appeals recognized this distinction in *Hawkins*[3] and reasoned that the more applicable Supreme Court authority was found in *Sanabria v. United States*, in which the Supreme Court considered whether two alleged methods of violating the same anti-gambling statute constituted separate offenses or the same offense, so that the acquittal of the defendant with respect to one of the alleged methods barred a second trial on the other alleged method. *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

In *Sanabria,* the Supreme Court noted that the Double Jeopardy Clause imposes few, if any, limitations on the legislature's power to define criminal offenses. *Id*. at 69, 98 S.Ct. at 2181. However, once the legislature has defined the statutory offense by its prescription of the "allowable unit of prosecution," that prescription determines the scope of protection afforded by the principles of double jeopardy. *Id*. at 69-70, 98 S.Ct. at 2181-82. Thus, whether a particular course of conduct

---

not reflect that ownership of the property is an element of the offense of robbery or aggravated robbery.

[3]*Ex parte Hawkins*, 6 S.W.3d at 555-56.

constitutes more than one offense under the same statute depends on this legislative choice.[4] *Id*. at 70, 98 S.Ct. at 2182.

The federal courts are generally bound by state court determination of state law. *Missouri v. Hunter*, 459 U.S. 359, 367-368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *Mullaney v. Wilbur*, 421 U.S. 684, 690-691, 95 S.Ct. 1881, 1885 - 1886, 44 L.Ed.2d 508 (1975); *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 743, 38 L.Ed.2d 702 (1974). Here, the Texas Court of Criminal Appeals has reviewed the aggravated robbery statute and determined that the legislature intended that each victim serve as an allowable unit of prosecution. *Hawkins*, 6 S.W.3d at 560-61. That determination is binding on the federal courts and proves dispositive of the double jeopardy inquiry. Prosecuting, convicting and sentencing Silva for two counts of aggravated robbery was not an unlawful attempt to divide a single offense as defined by state law into multiple offenses or multiple punishments.

Alternatively, Silva contends that the state court determination is not entitled to deference because the Texas Court of Criminal Appeals denied his application without written order, which is not an adjudication of the merits of his claim. Silva's contention is contrary to both Fifth Circuit and Texas case law. Texas jurisprudence reflects that a "denial" of relief disposes of a claim on its merits, not procedural grounds. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Thus, by denying Silva's applications without written order based on the findings of the state trial court, the Court of Criminal Appeals reached an adjudication on the merits that is entitled to

---

[4] The Supreme Court specifically distinguished the facts before it from the facts in *Blockburger*, which involved two separate statutes. *Id*. at 70 n.24, 98 S.Ct. at 2182 n.24.

deference under Section 2254.[5]  *See Barrientes v. Johnson*, 221 F.3d 741, 780 (5th Cir. 2000);

*Bledsue v. Johnson*, 188 F.3d 250, 256-57 (5th Cir. 1999).

Silva has not demonstrated that the state courts acted unreasonably or contrary to clearly

established federal law in rejecting his complaint of a double jeopardy violation.  (*See* State

Application 62,930-01 at 145-46; State Application 62,930-02 at 145-46).  Federal habeas corpus

relief is not warranted.

     2.     Sufficiency of the Evidence

Silva complains that his guilt was not proved beyond reasonable doubt because there is no

evidence of a deadly weapon, which is an essential element of the offense. The standard of review

for a challenge to sufficiency of the evidence is whether, when viewed in the light most favorable

to the verdict, any rational trier of fact could find the essential elements of the crime beyond a

reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560

(1979).   A "deadly weapon" includes anything that in the manner of its use or intended use is

capable of causing death or serious bodily injury.  TEX. PENAL CODE ANN. §1.07(a)(17) (Vernon

2003). Silva contends that the prosecution's position that an unknown object was used to injure the

K-Mart employees is not the equivalent of proving  use of a deadly weapon beyond reasonable

doubt.

---

    [5] Silva makes this same argument with respect to each ground of relief he asserts, but the court will address
his contention only once because the Court of Criminal Appeals' denial of his state habeas applications establishes
that each of Silva's claims has been adjudicated on the merits for purposes of Section 2254(d).

No one who witnessed the robbery could identify what Silva was holding in his hand, but both Urash and Morrow testified that they were stabbed while struggling with Silva.[6]   Morrow and Urash testified that neither of them was carrying a weapon when they confronted Silva, but Morrow did see something in Silva's hand that looked like car keys.  (4 Rep. R. 161-62, 241, 263).  Urash sustained a stab wound to his chest that punctured his heart, while Morrow received a stab wound to his arm that required forty-seven stitches. (4 Rep. R. 160-61, 164; 5 Rep. R. 143-44).  The surgeon who treated Urash opined that Urash would have died within an hour of his injury if he had not gotten medical treatment.  (5 Rep. R. 19-20).  The surgeon testified that Urash's wound was caused by a very sharp, flat, and tapered instrument, and could not have been caused by an average set of house or car keys.  (5 Rep. R. 22-24, 29).

Given the foregoing evidence, this court cannot find fault with the state court's decision to reject Silva's complaints of no evidence to support the deadly weapon finding.  (*See* State Application 62,930-01 at 146; State Application 62,930-02 at 146).  Silva has not demonstrated that the state court made an unreasonable factual determination or reached a decision  that is contrary to or an unreasonable application of clearly established federal law.

3.      Inflammatory Evidence

Silva contends that the trial court erred in overruling defense counsel's objections and allowing the prosecution to introduce a knife for demonstrative purposes at trial when that knife was not the actual weapon used in the course of the robbery.  Silva contends that he was denied due

---

[6]  When Silva was apprehended, he also had cuts on his fingers that a forensics expert indicated could be defensive wounds, but were also consistent with an individual's hand slipping off the handle of the knife as he made stabbing motions.  (5 Rep. R. 271-73).

process because, without the knife, the prosecution would have no foundation for establishing the deadly weapon element of each aggravated robbery charge.

In reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness. *Andrade v. McCotter*, 805 F.2d 1190, 1193 -1194 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir.1985). The erroneous admission of prejudicial evidence will justify federal habeas corpus relief only when it is material in the sense of being a crucial, critical, highly significant factor. *Mattheson*, 751 F.2d at 1445.

Although no witness was able to identify the actual weapon used in the robbery, but there was testimony that a sharp instrument was used to wound both Urash and Morrow. *See Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982)(noting that wounds on victim are factor to consider in deciding if knife of unknown size and shape was deadly weapon). Additionally, Texas law grants the trial court the discretion to admit into evidence a similar type instrument used in the commission of an offense if it is relevant and material to an issue in the case, is not overly inflammatory, and the original, if available, would be admissible. *Simmons v. State*, 622 S.W.2d 111, 113 (Tex. Crim. App.1981). Silva asserts that the jury could only have been confused by the knife because there was no evidence that the knife introduced was similar in length, sharpness, or size to the weapon used by Silva.; however, the surgeon who treated Urash testified that the shape and physical properties of the knife the prosecutor was using for demonstrative purposes was consistent with the weapon that caused Urash's injury. (5 Rep. R. 25-26). Silva cites to no instance in the record where the prosecution suggested that the knife was the actual weapon used or where the jury might have been confused about the purpose the knife served during trial.

The state court's decision that the knife had been properly used for demonstrative purposes at trial and was not inflammatory evidence is a reasonable determination under the available facts, and has not been shown to be a decision that is contrary to or an unreasonable application of clearly established federal law.  (*See* State Application 62,930-01 at 146; State Application 62,930-02 at 146).  Silva fails to demonstrate that he was denied a fundamentally fair trial due to the prosecutor's use of the knife for demonstrative purposes.

4.      Sentencing Error

Silva contends that the trial court demonstrated bias when it sentenced him to thirty-five years confinement for the offense of aggravated robbery with serious bodily injury because the jury only found Silva guilty of aggravated robbery causing bodily injury.  Silva contends that the trial court usurped the function of the jury by determining that there was serious bodily injury and sentencing him in accordance with facts that the jury did not find.

The jury found Silva guilty of the offense of aggravated robbery with a deadly weapon in Cause 0826138D, and reached the same verdict in Cause 0833761D.  (Clerk R. [0826138D] at 314, Clerk R. [0833761] at 307).  The judgments in Cause 0826138D and Cause 0833761D also reflect that Silva was convicted of aggravated robbery with a deadly weapon, and he was sentenced accordingly.  (Clerk R. [0826138D] at 319, Clerk R. [0833761] at 313).  His thirty-five year sentence does not exceed the statutory range of punishment of five to ninety-nine years or life for the first-degree felony offense of aggravated robbery with a deadly weapon.  *See generally* Tex. Penal Code Ann. §§ 12.32, 29.03 (Vernon 2003 & Supp. 2006).

Silva's complaint that the trial court sentenced him based on facts not found by the jury is frivolous. The state court's rejection of this claim was neither an unreasonable application of nor contrary to clearly established federal law.

5.      Ineffective Assistance of Appellate Counsel

Silva contends that he was denied the effective assistance of counsel on appeal. Persons convicted of a crime are entitled to the constitutionally effective assistance of counsel in their first appeal as a matter of right. *See Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 834-35, 83 L.Ed.2d 821 (1985). Appellate counsel's performance on appeal is judged under the familiar two-pronged standard set forth in *Strickland v. Washington. See Smith v. Robbins*, 528 U.S. 259, 286, 120 S.Ct. 746, 764,145 L.Ed.2d 756 (2000). *See generally Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient in that the errors made were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The second prong requires the defendant to show prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[7] *Id*. at 694, 104 S.Ct. at 2068. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Id*. at 694, 104 S.Ct. at 2068. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id*. at 697, 104 S.Ct. at 2069. Moreover,

---

[7] Silva suggests that harm or prejudice should be presumed because appellate counsel's representation effectively amounted to no representation at all. Silva is not relieved of his affirmative burden to demonstrate prejudice because none of his complaints about appellate counsel's performance fall within any of the narrow categories of representation that would raise a presumption of prejudice. *See Smith v. Robbins*, 528 U.S. 259, 286-288, 120 S.Ct. 746, 765-766 (2000).

effective assistance of appellate counsel does not mean counsel who will raise every non-frivolous ground of appeal available or requested by the defendant. *See Evitts,* 105 S.Ct. at 835; *West v. Johnson,* 92 F.3d 1385, 1396 (5th Cir.1996). Rather, it means–as it does at trial–counsel performing in a reasonably effective manner. *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998).

The state court rejected Silva's complaints about his appellate counsel. Claims of ineffective assistance are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070. Therefore, the federal court cannot grant habeas relief unless the state court's decision involves an unreasonable application of the law to the facts. 28 U.S.C. § 2254(d)(1).

Silva complains that appellate counsel failed to raise a number of meritorious issues on appeal and did not properly challenge the sufficiency of the evidence. The sole issue raised on appeal involved the factual sufficiency of the evidence. Appellate counsel Scott Brown provided an affidavit during the state habeas proceedings in which he asserted that he had considered various claims that Silva wanted him to raise on appeal, but he decided not to present these claims on appeal after finding that Silva's assessment of the relevant law was not accurate. (*See* State Application 62,930-01 at 76-77; State Application 62,930-02 at 76-77). Brown stated that he reviewed the record and researched all potential issues before drafting and filing a brief on the issue that he believed had the best chance on appeal. (*See* State Application 62,930-01 at 76; State Application 62,930-02 at 76). Brown also prepared and filed a petition for discretionary review on Silva's behalf (*See* State Application 62,930-01 at 76; State Application 62,930-02 at 76).

The state habeas court found that Silva presented no evidence demonstrating that Brown had inadequately briefed the insufficiency-of-the-evidence issue on appeal. (*See* State Application 62,930-01 at 143; State Application 62,930-02 at 76). The state habeas court further found no

evidence that the other issues that Silva identified as meritorious should have been raised on appeal or would have been successful on appeal.  (*See* State Application 62,930-01 at 143-45; State Application 62,930-02 at 143-45).  The state habeas court decided that Silva had not proved that he received ineffective assistance of appellate counsel in that he had not proved that  counsel should have raised additional issues on appeal or inadequately briefed the issues that was presented on appeal.  (*See* State Application 62,930-01 at 148; State Application 62,930-02 at 148).  Silva has not demonstrated that the state court rejection of his claim of ineffective assistance of appellate counsel resulted from an unreasonable factual determination or reflects a decision that is contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

RECOMMENDATION

Silva's petition for writ of habeas corpus should be denied.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until March 1, 2007.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28

U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until March 1, 2007 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED FEBRUARY 7, 2007.


    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE